UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CORBETT LE GRAND,<br><br>        Petitioner,<br><br>  vs.<br><br>JAMES A. YATES, Warden,<br><br>        Respondent. | Case No:  C 09-00370 SBA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

      This matter is now before the Court for consideration of Petitioner's Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  Petitioner seeks to challenge his 2005 conviction in the San Benito County Superior Court for lewd and lascivious acts involving a minor and sexual penetration of a minor.  Respondent has filed an Answer to the Petition and Petitioner has filed a Traverse.  For the reasons discussed below, the Petition is DENIED.

I.     <u>**BACKGROUND**</u>

      The parties are familiar with the facts of this case, which are summarized herein only to the extent that relate to the issues raised in the Petition.

A.   **FACTUAL SUMMARY**

Petitioner was temporarily employed in early 2003 as a "gopher" employee for a charter bus company owned by Kevin Lee ("Lee"). Lee lived with his two sons, his girlfriend, and his girlfriend's 13-year-old daughter, Crystal[1], who considers Lee a step-father or uncle figure.

In March 2003, Petitioner accompanied Lee to Bolado Park for the Pop Warner football registration for Lee's son, Matthew. Registration was set to take place on March 15; however, because spots were limited and they believed there would be a long line, they planned to camp out at the park in advance of March 15. Crystal joined the two men on one of the evenings. Upon arriving at the park, they observed that no one else was there and realized there was no need to camp overnight. However, when they decided to leave, the park gates were locked, leaving the group no choice but to stay overnight.

Petitioner, Lee, and Crystal slept in the back of Lee's SUV, each in their own sleeping bag, with Crystal between the two men. After Lee fell asleep, Petitioner started touching Crystal by slipping his hand into her pants, under her underwear and into her vagina. Crystal heard Petitioner unzip his pants as attempted to unbutton her pants, prompting her to try to wake Lee. When Lee awoke, Crystal asked him to take her to the bathroom, but Lee told her to have Petitioner take her instead. Once they returned to the truck, Crystal moved to the front seat of the SUV.

Crystal did not report the incident to anyone until a year later, when she told a trusted boyfriend because she "couldn't handle it anymore." She then told her mother and Lee, who then called the San Benito Sheriff's Department. Crystal explained that she did not tell anyone immediately after the incident because she was scared and blamed herself for being unable to stop Petitioner.

B.   **THE TRIAL**

In January 2005, Petitioner was charged by information with (1) sexual penetration

---

[1] Since Crystal is a minor, her last name is omitted to preserve confidentiality.

of a minor in violation of Penal Code[2] § 289(h) (count one) and (2) lewd and lascivious acts on a child under the age of 14 in violation of Penal Code §288(a) (count two).  The information alleged a prior sex offense, Cal. Penal Code §§ 667.51(a), 667.6(a), and strike conviction, § 667(b)-(i), as to both counts based on Petitioner's 2001 conviction of § 288(a).  The information also alleged aggravated circumstances based on the prior conviction as to count two.  Id. § 667.61(a), (d).

The trial commenced in June 2005.  Petitioner was represented by public defender Gregory LaForge ("LaForge"), who thereafter contracted with attorney George Barton ("Barton") to actually handle the trial.

The crime was alleged to have occurred between March 1 and April 1, 2003.  Crystal could not provide a specific date of the incident, but testified that it occurred "at the end of February, beginning of March" and that they went to Bolado Park "to camp out to do football sign-ups the next day for Kevin's son."  Lee testified that the incident occurred "several nights before" the sign-up for the football league, rather than the night before.  He also testified that Crystal only camped out one night, which was "a couple days" before the registration date.

The registration date was confirmed by Ruth Beelard ("Beelard"), the secretary of the San Benito County Fairgrounds, who testified about a rental agreement with the Pop Warner Football League.  She affirmed that the agreement allowed Pop Warner to use the park for registration on March 15, 2003, and allowed registrants to camp out prior to that date.  The secretary confirmed that Lee paid the park for either two nights or two spaces for camping.  The fact that Lee made his payment early, however, suggested that the payment was for two nights and not two spaces.

Petitioner presented a general alibi defense based on a contract he had with his father from 2002 through April 2003, in which he agreed to be home by 9:00 p.m.[3]  The contract

---

[2] All Penal Code references are to the California Penal Code.

[3] They entered into this contract for Petitioner's benefit because he was on probation as a result of a prior conviction for lewd acts with a minor.

allowed for some exceptions, including time Petitioner spent living with a girlfriend.  The prosecution presented two rebuttal witnesses who testified that Petitioner was on a camping trip during the contract period and was at the campsite past 9:00 p.m. and spent the night.  The witnesses also stated that Petitioner had told them that he had stayed at Lee's house several times.

On July 6, 2005, a jury found Petitioner guilty on both counts and found true the special allegations.

### C. POST-CONVICTION PROCEDURAL SUMMARY

Following Petitioner's conviction, his counsel filed a motion for new trial based on newly-discovered evidence.  The motion, filed September 5, 2005, was based on the declarations of three witnesses who claimed that Petitioner was not at Bolado Park between March 14 to March 16, 2003.  According to declarant Kristyn Kerby ("Kristyn"), Petitioner's girlfriend around the time of the incident, Petitioner was camping with her at Hollister Hills Park on March 14 to celebrate her twenty-first birthday.  Kristyn's mother provided a corroborating declaration.  Kristyn also declared that Petitioner was with her in Fremont on March 15 and March 16, where they continued her birthday celebration at a bar.  Kristyn's mother and sister, who were also at the birthday celebration, also offered corroborating declarations.  The trial court denied the motion, finding that there was no evidence that demonstrating that Petitioner could not have discovered and produced the "newly discovered evidence" before trial.  On October 20, 2005, the trial court sentenced Petitioner to a prison term of twenty-five years to life.

Petitioner filed a direct appeal from his conviction and simultaneously sought habeas relief in the California Court of Appeal.  In an unpublished disposition, the Court of Appeal affirmed his conviction and sentence on July 31, 2007.  The Court stated that, even disregarding the issue of counsel's diligence, the "newly discovered evidence" would not have likely led to a different result on trial because it referred to a date that the incident definitely did not occur on.  On the same date, the Court of Appeal summarily denied his habeas petition. The California Supreme Court denied relief on October 31, 2007.

On January 27, 2009, Petitioner filed the instant Petition for Writ of Habeas Corpus, asserting a claim for ineffective assistance of counsel under the Sixth Amendment.  Dkt. 1. Respondent answered the Petition, and Petitioner, now through counsel, filed a Traverse. The matter has been fully briefed and is ripe for adjudication.

## II.     STANDARD OF REVIEW

The instant Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Habeas petitioners bear the burden of showing that a state court's decision applied some Supreme Court precedent in an objectively unreasonable manner.  Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

In determining whether a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, courts in this Circuit look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991); LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000).  Moreover, "a determination of a factual

- 5 -

issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. DISCUSSION

Petitioner argues that trial counsel was ineffective in failing to reasonably investigate and present evidence of Petitioner's whereabouts on the actual night of the offense. A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).

There is a two-prong test applicable to claims for ineffective assistance of counsel. Id. at 688. First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id.; see also Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001). The defendant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy. United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 468 U.S. at 687.

To satisfy the second prong, petitioner must establish that he was also prejudiced by counsel's substandard performance. See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694). Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." Id. Judicial scrutiny of counsel's performance is "highly deferential." Strickland, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. Strickland, 466 U.S. at 697.

Here, Petitioner argues that his trial counsel's performance was deficient because they allegedly failed to identify the date the complaining witness stated that the incident

occurred (i.e., March 14, 2003), and as a result, erroneously focused on March 15, 2003 as the date for which he needed an alibi.  Had they done so, Petitioner claims that he would have been able to present an alibi defense based on Kristyn's claim that he was with her camping out on March 14 and dancing at a country western bar on March 15.  Respt. Ex. 9. This contention lacks merit.  Prior to trial, Petitioner received the victim's videotaped statement in which she stated that the incident occurred the evening before the Pop Warner football registration on March 15, 2003.  Respt. Ex. 2 at 48-49.  In addition, at trial, Kevin Lee testified that the incident must have occurred in the few days preceding the sign-up for football.  RT 48-49.  As such, Petitioner was well aware of the date the incident is alleged to have occurred.  Since Petitioner's whereabouts on those dates is solely within his knowledge, he cannot fault his counsel for being unaware of information which he did not convey to them, i.e., that he allegedly was with Kristyn during that time period.  See Strickland, 466 U.S. at 691 (noting it is reasonable for counsel to base his or her action "on information supplied by the defendant," particularly as to "what investigation decisions are reasonable depends critically on such information.").

Petitioner also complains that his trial counsel did not obtain and present Petitioner's employment records at trial, which he claims would have been exculpatory.  However, Petitioner's employment records only account for his whereabouts between the hours of 8:30 a.m. and 5:30 p.m. on the days preceding March 15, whereas the trial record clearly suggests that the alleged molestation occurred well after 5:30 p.m.  These records do not support Petitioner's claim that he was not at the park the day of the incident.  As such, even if trial counsel was remiss for not presenting Petitioner's employment records at trial, Petitioner has not shown that the result at trial would have been different.

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability in its ruling.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  The Court declines to issue a certificate of appealability in this case, as Petitioner has not demonstrated that "jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT the petition for a writ of habeas corpus is DENIED. The Court declines to issue a certificate of appealability. The Clerk of the Court shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: March 30, 2012

                                               _____
                                               SAUNDRA BROWN ARMSTRONG
                                               United States District Judge